IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,

    Plaintiff,

    v.

SOS SECURITY SERVICE, INC., et als.

    Defendants.

**CIVIL NO. 06-1316(JAG/BJM)**

**REPORT AND RECOMMENDATION**
**RE: PETITION FOR ADJUDICATION OF CIVIL CONTEMPT**

**PROCEDURAL BACKGROUND**

Plaintiff Elaine L. Chao ("plaintiff" or "Secretary"), the Secretary of the United States Department of Labor ("DOL"), filed a complaint against defendants SOS Security Services, Inc. ("SOS") and SOS's president, Edgardo Batiz Ramia, alleging violations of several provisions of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§201, *et seq*. (Docket No. 1). The parties subsequently entered into a Consent Judgment that was approved and ordered by this court on April 6, 2006. (Docket No. 4).

On May 16, 2007, plaintiff filed a Petition for Adjudication of Civil Contempt alleging that defendants have failed to comply with three distinct requirements of the Consent Judgment. (Docket No. 6). First, plaintiff alleges that defendants have not paid to the DOL $105,061.68 of the $137,451.04 of overtime compensation required under Part II of the Consent Judgement. Id. Second, plaintiff alleges that defendants, in violation of Part I of the Consent Judgment, have continued to deprive their employees of overtime compensation as required by Sections 7 and 15(a)(2) of the FLSA. Id. And third, plaintiff alleges that defendants have violated Part I of the Consent Judgment by failing to keep adequate employment records. Plaintiff seeks an adjudication of contempt, orders mandating that defendants come into compliance, and imposition of costs and expenses. Id.

The case was assigned to me pursuant to 28 U.S.C. § 636(b)(1) for hearing and a report and recommendation. (Docket No. 10). The parties have filed memoranda supporting their respective

Elain L. Chao, Secretary of Labor vs SOS Security Services, Inc.                                      Page 2
Civil No. 06-1316 (JAG/BJM)
Report and Recommendation

positions, and an evidentiary hearing was held on August 27, 2007, during which the parties reached certain stipulations as to plaintiff's claims.   As set forth below, I recommend that the Secretary's motion for an adjudication of civil contempt be **GRANTED**.

## FACTUAL BACKGROUND

The following facts are drawn from the testimony presented during the evidentiary hearing, the parties' on-the-record stipulations, and/or documents submitted by the parties.

**A.     Failure to Comply with Order to Pay Back Wages**

As part of the Consent Judgment, this court ordered defendants to pay a total of $137,451.04 in back wages and post-judgment interest to the DOL Wage and Hour Division for distribution to 65 employees. (Docket No. 4, 8-2, ¶2.a). These back wages correspond to the time period from February 9, 2002, until February 7, 2004.  Payment was to be made in one lump-sum payment of $20,000 with the balance to be paid in 28 monthly installments of $4,194.68 beginning April 6, 2006.  (Docket No. 4). The Consent Judgement contains an acceleration clause that provides that "[i]n the event that any one installment payment is not made within 10 days of the due date all remaining installment payments become due immediately." (Docket No. 4).   Defendants made the lump-sum payment of $20,000 and two payments $4,194.68, although they made the second of these payments 45 days late, thus activating the Consent Judgment's acceleration clause.  From June 15, 2006, until January 7, 2007, defendants made no further payments toward their debt.   Starting January 8, 2007, defendants began making payments of $1,000 per month. (Docket No. 8-2).   The parties stipulated at the evidentiary hearing that defendants currently owe $103,561.68 in back wages under the Consent Judgment, plus additional post-judgment interest due upon the date this amount is paid.

Defendants, while not disputing the foregoing, presented testimony of two witnesses to support their contention that defendants were financially unable to comply with the Consent Judgement. Defendants first presented the testimony of SOS's controller, Heriberto Ríos Rivas, who managed SOS's financial and bank records for the last three years.  He testified that SOS has been

operating at a loss since January 2007, and has lost an estimated $30,000 to $40,000 in the first six months of this year. SOS earned a profit of $120,000 in 2005, but lost approximately $50,000 to $60,000 in 2006. Mr. Ríos prepared a financial statement dated June 30, 2007. (Hearing Exh. 3). That financial statement indicates, *inter alia*, that "Officer's Compensation" rose from $88,000 in 2005 to $154,450 in 2006; that "Salaries" rose from $111,201 in 2005 to $174,655 in 2006; and that "Contracted Services"[1] dropped from $1,448,700 in 2005 to $1,078,881 in 2006. Id. SOS previously had a line of credit with R&G Premier Bank ("R&G"), but the credit line is not presently available, and SOS currently owes R&G $109,768.00 for a business loan which is subject to a monthly payment plan. (Hearing Exh. 1).

SOS has only one bank account, and Rios identified incomplete copies of the statements for that account for January, February, March, April, May and June of 2007. (Hearing Exh. 4). Those statements indicate monthly deposits totaling $121,651.55 in January, $101,089.22 in February, $137,969.77 in April, $137,214.38 in May, and $124,716.38 in June.[2] Id. The same statements reflect debits of $114,725.95 in January, $110,287.39 in February, $143,994.31 in April, $131,149.29 in May, and $124,728.23 in June. The statements do not include copies of cancelled checks or complete information as to the persons or entities that received the funds withdrawn, and therefore constitute no evidence as to what the withdrawn money was used for. The last statement provided, which covered transactions for June 2007, reflects a negative balance in the account. Id.

Ríos testified that since signing the Consent Judgment in April 2006, SOS has made efforts to pay the money owed in back wages by increasing revenues and decreasing expenses. SOS has taken legal action against two clients to recover receivables, and has sent out proposals to obtain new

---

[1] I understand that "Contracted Services" refers to the amounts SOS paid to its security guards.

[2] The single page of the March 2007 statement that was submitted does not indicate the total deposits or debits for that month.

**Elain L. Chao, Secretary of Labor vs SOS Security Services, Inc.**                                                Page 4
Civil No. 06-1316 (JAG/BJM)
Report and Recommendation

clients. In addition, SOS eliminated two positions (secretary and messenger). In January 2007, Ríos proposed reducing salaries of all employees, but no decision was made on this. SOS pays approximately $32,000 every two weeks in payroll, not including fixed salaries. SOS pays $5,000 to $6,000 weekly in fixed salaries for Rios, Carloz Batiz Ramia, Edgardo Batiz Ramia, and Carlos Batiz Torres. Except for Ríos, all of SOS's salaried employees are relatives of defendant Batiz.

SOS filed an annual tax return in 2004 but did not file annual returns for 2005 and 2006 because the necessary documents were undergoing evaluation by an independent auditor. SOS filed quarterly returns for 2005 and 2006 but did not present these documents in court. SOS filed no annual reports in 2005 and 2006 with the Puerto Rico Department of State. No one from SOS contacted DOL in July 2007 when SOS ceased making payments. Ríos received a phone call from DOL regarding the $1,000 payments, but did not at that time provide DOL with any information regarding SOS's financial situation.

SOS's owner and President, co-defendant Edgardo Batiz Ramia, also testified during the hearing. Batiz testified that defendants were financially unable to comply with the Consent Judgment's payment plan, that in September 2006 SOS lost several actual and potential clients because DOL issued a press release regarding SOS's failure to comply with the FLSA, and that some of SOS's security guards made comments adverse to SOS and its clients. Accordingly, Batiz blames the DOL for SOS's inability to pay the required back wages. Batiz testified that he has not received salary for six months and has made efforts to increase revenues to pay the amount owed under the Consent Judgment. These efforts include bringing two lawsuits against clients who owe SOS money. Batiz expects that $500,000 will be collected in 2008 as the result of one of the lawsuits. For the last year and a half, Batiz has attempted to sell a property he owns in Cabo Rojo with $300,000 equity but has not received any offers. Batiz said that he put a "for sale" sign on the property and listed it with a realtor, but could not recall the realtor's name. Batiz also owns a house valued at $280,000 that has a mortgage of approximately $220,000. Batiz has not attempted to take out second mortgage loans on either property in order to pay the debt and believes that he would be unable to obtain such loans because he has been late on making payments for the mortgage he has

Elain L. Chao, Secretary of Labor vs SOS Security Services, Inc.                                Page 5
Civil No. 06-1316 (JAG/BJM)
Report and Recommendation

on the Cabo Rojo property.  Batiz has filed personal annual income tax returns for each of the last three years, but did not submit them to court.  His wife works for the Puerto Rico government and earns approximately $30,000 per year.  SOS signed an agreement in 2002 to comply with the DOL and to pay overtime to workers.  Nevertheless, SOS to date has not made provisions to pay overtime to workers because of its policy that no guard will work more than 40 hours per week.

### B.      Failure to Pay Overtime

Part I of the Consent Judgment also provides that "Defendants shall not, contrary to section 7 of the [FLSA], employ any of their employees in any workweek... for work weeks longer than the hours now, or which in the future become, applicable under sections 7 and 15(a)(2) of the [FLSA], unless the said employees receive compensation for their employment in excess of the prescribed hours at rates not less than one and one-half times the employees' regular rates." (Docket No. 4).

Defendants stipulate that they are in contempt of this provision by not paying overtime to their employees since they signed the Consent Judgment in April 2006.  The parties are currently investigating the amount of back wages defendants owe corresponding to the time period from February 9, 2004, to the present, and plaintiff reserves all rights to collect any unpaid overtime wages.

### C.      Failure to Keep and Make Available Accurate Employment Records

Part I of the Consent Judgment also requires that "Defendants shall not fail to make, keep, and preserve adequate records of their employees and of the wages, hours, and other conditions and practices of employment maintained by them as prescribed by the Regulations issued pursuant to Section 11(c) of the [FLSA] and found at 29 CFR Part 516." (Docket No. 4).  During a pre-hearing status conference with the undersigned, the parties reached the following stipulations to resolve plaintiff's claim that defendants are in contempt of the Consent Judgment's record keeping provision:

> Defendants shall produce to the Caribbean District Office of the DOL's Wage & Hour Division no later than 60 days from date of entry of the court's order the following documents:

Elain L. Chao, Secretary of Labor vs SOS Security Services, Inc.                                     Page 6
Civil No. 06-1316 (JAG/BJM)
Report and Recommendation

1. Copies of time and attendance sheets filled out by employees for the period of February 10, 2004 through the present. These time sheets will be organized by pay period;

2. A list of all employees, present and former, employed by defendants during the period of February 10, 2004 through the present. This list will contain the following information: each employee's address, telephone number, social security number, rate(s) of pay, date of hire and date of termination;

3. An electronic back-up of pay stubs maintained in defendants' Peachtree Payroll System for the period of February 10, 2004 through the present. The pay stubs will be produced on compact disk in Excel format;

4. An Excel worksheet in electronic form, for the period of February 10, 2004 through the present containing all pay periods, employees' names, social security numbers, rate(s) of pay, hours worked in the pay period by each employee, and amount paid in the pay period to each employee. This spreadsheet will identify any back wages due to employees. The spreadsheet will be organized by employee and by pay period;

5. A list of all of defendants' clients where employees were assigned from the period of February 10, 2004 to the present; and

6. Any other payroll records for the period of February 10, 2004 to the present.

## DISCUSSION

A civil contempt proceeding is a proper means for ensuring compliance with injunctive orders issued to enforce the FLSA. McComb v. Jacksonville Paper, Co., 336 U.S. 187 (1949); Hodgson v. Hotard, 436 F.2d 1110, 1114 (5th Cir. 1971). In McComb, the Supreme Court harbored "no doubts concerning the power of the District Court to order respondents, in order to purge themselves of contempt, to pay the damages caused by their violations of the decree." McComb, 336 U.S. at 193.

The party seeking an order of civil contempt must demonstrate by clear and convincing proof that the opposing party has violated the court's injunctive decree. Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 77 (1st Cir. 2002); Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991). Nevertheless, the violation need not be willful to trigger contempt sanctions, nor must the

Case 3:06-cv-01316-JAG-BJM   Document 25   Filed 09/20/07   Page 7 of 12

Elain L. Chao, Secretary of Labor vs SOS Security Services, Inc.                                              Page 7
Civil No. 06-1316 (JAG/BJM)
Report and Recommendation

plaintiff prove that the defendant violated the court's order in bad faith. McComb, 336 U.S. at 191; Goya Foods, Inc., 290 F.3d at 76 ("The law is firmly established in this circuit that good faith is not a defense to civil contempt."). As the Supreme Court stated in McComb,

> The absence of willfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.... Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.... An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently. The force and vitality of judicial decrees derive from more robust sanctions. And the grant or withholding of remedial relief is not wholly discretionary with the judge.... The private or public rights that the decree sought to protect are an important measure of the remedy.

Id. at 191.

Courts have interpreted McComb as holding that district courts not only have the power but the duty to order payments to be made by a party to purge civil contempt of orders issued to rectify wage violations. Donavan v. Sovereign Security, Ltd., 726 F.2d 55, 59-60 (2nd Cir. 1984); Hodgson, 436 F.2d at 1114-15; Durkin v. Casa Baldrich, Inc., 111 F.Supp. 71, 75-76 (D.P.R. 1953), *aff'd* 214 F.2d 703 (1st Cir. 1954). Importantly, the "purpose of [an] injunction to restrain the withholding of wages due [under the FLSA] is not to collect a debt owed by an employer to his employee but to correct a continuing offense against the public interest." Hodgson, 436 F.2d at 1113-14. Because an injunction issued under the FLSA is not "a mere money judgment" but a directive taken to "redress a wrong being done to the public good," the Fifth Circuit in Hodgson found the district court abused its discretion when it failed to make a civil contempt finding against an employer that had long disobeyed the court's injunction to refrain from withholding statutory wages of twelve employees. Id.

Once the Secretary has proven that the employer is delinquent in complying with an injunction under the FLSA, she has established a prima facie case for civil contempt. Id. at 1115. At that point, the Secretary does not bear the burden of proving that the employer was able to comply

Elain L. Chao, Secretary of Labor vs SOS Security Services, Inc.                                     Page 8
Civil No. 06-1316 (JAG/BJM)
Report and Recommendation

with the earlier judgment.  Instead, it is incumbent on the employer, if civil contempt is to be avoided, to prove that it was impossible for him to comply with the court's order. Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 13-14 (1st Cir. 1996); Hodgson, 436 F.2d at 1115.

The employer's burden is a heavy one.  A party who violates an injunction under the FLSA must show that he was he was "reasonably diligent and energetic in attempting to accomplish what was ordered." Palmigiano v. Garrahy, 448 F.Supp. 659, 670 (D.R.I. 1978).  Nevertheless, a defendant must do more than simply show that his efforts to comply were substantial or made in good faith; rather, the defendant must "plainly and unmistakably" demonstrate an inability to comply with the court's order. Donovan v. Burgett Greenhouses, Inc., 759 F.2d 1483, 1486 (10th Cir. 1985); Hodgson, 436 F.2d at 1115.  "This is particularly true when, as here, the defense - i.e., financial inability to comply - rests on facts which are peculiarly within the defendant's own knowledge." Donovan, 759 F,2d at 1486, *citing* Hodgson, 436 F.2d at 1115.  A defendant claiming inability to comply with an injunction bears the burden of production as to that defense. United States v. Rylander, 460 U.S. 752, 757 (1983).

In this case, there is no dispute that the Secretary has established a prima facie case of civil contempt insofar as SOS concedes that it failed to make timely payments as required by the Consent Judgment and currently owes $103,561.68 in back wages, plus additional post-judgment interest due upon the date this amount is paid.  However, defendants argue that an order of civil contempt should not issue because they were financially unable to comply with the injunctive order.

Defendants supported their position during the evidentiary hearing with the testimony of SOS's owner (co-defendant Batiz) and its controller.  SOS also submitted an unaudited financial statement, and partial bank statements corresponding to the first six months of 2007.  On the whole, however, the evidence SOS submitted was sketchy and incomplete, and was insufficient to meet defendants' burden of proving inability to comply with the payment plan ordered in the Consent Judgment.

It should be remembered initially that the Consent Judgment became effective in April 2006.

Elain L. Chao, Secretary of Labor vs SOS Security Services, Inc.                                    Page 9
Civil No. 06-1316 (JAG/BJM)
Report and Recommendation

At the time defendants signed the Consent Judgment, SOS by its own admission, had earned a profit of $120,000 for the previous year (2005), and SOS has provided no explanation as to why those profits could not have been applied to satisfy the judgment. Nor have defendants provided the court with sufficient, reliable evidence regarding the state of SOS's finances in June 2006 - when defendants discontinued making the required payments - or for the rest of that year. In particular, although defendants claim SOS's business dropped during 2006, defendants have produced no bank records for that year that would substantiate the amounts of money SOS received or the amount that was paid for operating expenses. SOS did produce an unaudited financial statement (Hearing Exh. 3) that indicates a drop in revenue from 2005 to 2006; however, that same statement indicates that salaries paid to SOS's fixed salary employees (which, apart from the controller, consist of defendant Batiz his father and his brother) rose from $111,201 in 2005 to $174,655 in 2006. The financial statement also indicates that compensation paid to SOS's officers rose from $88,000 in 2005 to $154,450 in 2006. Thus, SOS's own financial statement indicates that Mr. Batiz and his relatives were receiving substantially greater income from the company during 2006 when SOS's revenues and profits supposedly were going down.

The financial information provided for the first half of 2007 also fails to satisfy defendants' heavy burden. In particular, SOS provided only selected pages from its bank statements corresponding to the months of January through June of 2007. (Hearing Exh. 4). The pages submitted document total monthly deposits ranging from approximately $101,000 to $137,000, and total monthly withdrawals ranging from approximately $110,000 to $143,000. Defendants, however, failed to provide complete copies of the bank statements and failed to provide cancelled checks which could have demonstrated who received the money that was withdrawn from the account. This omission is both telling and critical, since defendants have the heavy burden of proving financial inability to pay and the evidence to substantiate this claim is "peculiarly within the defendant's own knowledge" and control. Hodgson, 436 F.2d at 1115. In this regard, Hodgson is instructive. There, the Fifth Circuit refused to credit the employer's testimony that he had no money

Elain L. Chao, Secretary of Labor vs SOS Security Services, Inc.                                Page 10
Civil No. 06-1316 (JAG/BJM)
Report and Recommendation

or property to pay ordered minimum wages because that testimony was not substantiated by documentary evidence of how his assets had been disposed of. Id. at 1115-16. Here, defendants could have provided the court with documentary evidence in the form of cancelled checks or other documents showing how much of the money withdrawn from the account was received by defendant Batiz and his family, and how much went for operating expenses. Hence, I cannot credit defendants' unsubstantiated testimony that SOS had no assets that could have been applied to payment of back wages.

Defendant Batiz has also failed to demonstrate his personal inability to comply with the Consent Judgment. Although he testified that the he does not have the ability to pay, and submitted a copy of his bank statements, he did not submit any copies of his income tax returns. Moreover, although Mr. Batiz owns a property in Cabo Rojo with an equity of $300,000, and a personal residence, he has not attempted to obtain a second mortgage loan on either property in order to satisfy the judgment against him. Moreover, his testimony that he has unsuccessfully attempted to sell the Cabo Rojo property is unpersuasive absent any substantiation that he advertised the property in any media or listed the property with a licensed realtor.[3] In short, I do not credit Mr. Batiz's testimony that it is impossible to sell a property, in which he has $300,000 in equity, at a sufficient margin to cover the balance of his debt ($103,561.68).

Finally, I note that to date defendants continue to violate the FLSA and Part I of the Consent Judgment by failing to pay overtime to SOS's employees. SOS agreed with DOL in 2002 to start paying overtime wages under the FLSA, and its failure to comply with that agreement led to the filing of the present case to collect the overtime. And even after signing the Consent Judgment, and up to the date of the evidentiary hearing, SOS has continued to fail to pay its employees overtime wages demanded by the FLSA. These longstanding violations, coming after ample warning, undermine Mr. Batiz's credibility in testifying that he and SOS have done everything in their power

---

[3] Mr. Batiz testified that he placed a "for sale" sign on the property and listed with a realtor, but could not recall the name of the realtor.

Case 3:06-cv-01316-JAG-BJM   Document 25   Filed 09/20/07   Page 11 of 12

Elain L. Chao, Secretary of Labor vs SOS Security Services, Inc.                                Page 11
Civil No. 06-1316 (JAG/BJM)
Report and Recommendation

to try to pay the ordered back overtime wages. To the contrary, I find that defendants have willfully violated the terms the Consent Judgment and failed to "plainly and unmistakably" demonstrate an inability to comply with the court's order. Donovan, 759 F.2d at 1486; Hodgson, 436 F.2d at 1115.[4]

## CONCLUSION

In view of the foregoing, I recommend that plaintiff's motion for an order of civil contempt be **GRANTED**. Accordingly, I recommend that this court order that defendants SOS Security Service, Inc. and Edgardo Batiz Ramia be found in civil contempt by reason of their failure to comply with the terms of the Consent Judgment, and that they may purge themselves of contempt only by:

1) Paying to the Secretary of Labor within 60 days of the date of any order adopting this report and recommendation the amount of $103,561.68 in back wages due under the terms of the Consent Judgment, plus post-judgment interest due upon the date of payment;

2) That within five working days of any order approving this report and recommendation defendants post a bond secured by real property in an amount sufficient to cover the amount owed in the preceding paragraph; and

3) Producing to the DOL's Wage and Hour Division within 60 days from the date of any order adopting this report and recommendation the documents and information the parties stipulated to as set forth in Part C of the Factual Background Section above[5].

I further recommend that the Secretary be granted leave to file: 1) a motion for an order for

---

[4] Defendants argue that they lost business because DOL issued a press release in September 2006 about SOS's failure to pay overtime wages. Defendants' blame is misplaced insofar as there is no evidence that DOL violated any agreement with defendants by issuing a press release. Moreover, defendants easily could have foreseen that their history of illegal employment practices would generate adverse publicity.

[5] During the evidentiary hearing the Secretary requested that the Court appoint a receiver to take control of SOS's records and finances. I believe that the measures set forth above are adequate and do not recommend a receivership at this time.

defendants to pay to the DOL any unpaid overtime wages for defendants' employees corresponding to the time period from February 10, 2004, to the present; and 2) a motion that defendants pay to the DOL the costs of investigating this matter and bringing an action to enforce the Consent Judgment. See McComb, 336 U.S. at 191; Goya Foods, Inc., 290 F.3d at 78.

The parties have ten (10) business days to file any objections to this report and recommendation. See Local Rule 72(d); 28 U.S.C. § 636(b)(1). Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986); see also Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round.")

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico, this 20th day of September, 2007.

                                                S/*Bruce J. McGiverin*
                                                BRUCE J. McGIVERIN
                                                United States Magistrate Judge